Good morning. May it please the Court. My name is Ian Burrell, and I represent the appellant, Anthony Fortner. In the First Step Act, Congress thoughtfully enacted a major overhaul within the Bureau prison system. Certain nonviolent offenders who engage in productive activities in the walls of their prison earn liberty through mandatory transfers outside of those Congress made this a nondiscretionary scheme. The BOP must grant time credits out of prison walls and must apply them in one of these two ways. Mr. Fortner brought a habeas claim You're talking too fast for me. I'll slow down. Sorry, Your Honor. Mr. Fortner brought a habeas claim saying that the BOP was violating the law and he was in those walls, those prison walls unlawfully. But rather than reach the merits of that claim, the district court ruled that habeas was jurisdictionally inappropriate. Well, I think the district court relied on our case and Spencer, isn't that right? Or at least maybe Kruger and Spencer. When I read Spencer, and I'm quoting here, if the prisoner is not challenging the validity of his conviction or the length of his detention, you're not challenging either of those, are you? Or how are you? You know, how do you deal with Spencer? That seems to me to be the biggest Eighth Circuit case you've got to deal with. You may disagree, but No, I do agree that Spencer is kind of the controlling case here. I think Spencer is a very different sort of case. There the prisoner was challenging being put in restraints within the walls of the prison. So what he was challenging was the walls of his, was within the walls of the prison, the prison life that he was being subjected to. So I will say that prisoner was not challenging the duration of his confinement in a real sense. Mr. Fortner is challenging the duration of his confinement. He's still saying that he should be within the BOP purview in some way, but he shouldn't be in the prison walls. He should be, say, in home confinement. Are you saying that's dicta in Spencer then? Not dicta, but it's inexact language. The language of the word confinement can mean multiple different things. I'm quoting here length of his detention. Length of his detention. Sorry, Your Honor. Yes, I think detention, same thing, can mean either detained in prison walls or it can mean within the BOP system in some way. So the relief would be that he would remain in the BOP system but would be granted that mandatory transfer outside of the prison walls. And I think that's So why is this case not a change of circumstances issue or conditions issue when he's already received the benefit of the Act? Well, he's received part of the benefit of the Act, so the first 365 days. The additional part of the Act, when I think of the precedent involving the changes of conditions of confinement, it's really about discretionary decisions that the BOP gets to make. Which facility, which prison is a person housed in? Minnesota, South Dakota, California? How is the person treated on a day-to-day basis within the walls of the prison? What are the cell conditions like? This is a very different sort of thing, and I think this difference is recognized in other areas of the law. How would it result in his release? It would result in his release outside of the walls of the prison to either a halfway house, an RRC, or to home confinement. What's the best case you have for this outside-the-walls-of-the-prison theory that seems to be the anchor of your argument? I think it's Jones v. Cunningham, which is the, I think, 1960-something Supreme Court case. There, that case ruled that habeas was never about whether some custody remained, but about the nature of that custody. So this exact issue isn't before it, but Supreme Court precedent is clear that parole is a habeas issue. Good time is a habeas issue. And those are very close parallels. They're not perfect parallels, but they're very close parallels. I don't think Cunningham does it much good. The district court said here that there was no jurisdiction in habeas, but there was a conditions of confinement claim. Is that correct? Correct. Was your client offered the option of switching? I think that maybe those weren't exhausted or the filing fee hadn't been paid. I mean, if we agree with the district court, practically speaking, what options does your client have left? Practically, so yes, the district court said we could recharacterize his complaint as a civil rights complaint, but it wasn't exhausted, so we'd have to dismiss it and charge him for the thing. Now, there's no exhaustion requirement on the habeas side, then, right? Correct, yes. And... Why isn't this, more of a policy perspective, the sort of thing that should be subject to an exhaustion, right? Because it's one of those things that the BOP or prisons do, right? They calculate good time credits, and all the time you've got prisoners who say, you missed a day, I'm here a week too long. I'm wondering kind of the practical, if we accept your argument, are we, and I've seen this in one of the Supreme Court cases, either in the dissent, I think, worrying about opening the door to a flood of prison litigation. Is that a concern here? It's not the primary concern I have, but is that a practical effect of accepting your argument? It may be, but I think the bulk of the practicality cuts the other way. I think that traditional civil litigation is not well suited to deal with these sorts of claims. It takes an extraordinarily long time when the amounts of good time, good time, we're dealing with here. But it does force exhaustion, which seems to me, on some level, a good thing. It would force more exhaustion, that's true. Also, the remedy in traditional civil litigation is money, rather than a person's liberty. And I think it would actually invite post-release claims of money damages, too. So you could see someone making a claim after their release saying, oh, I should have been released earlier, I'm entitled to money damages as a result of that. So I think it would create more of a practicality mess than it would solve. In parsing this out, I decided the most significant hurdle you have is 3624 G3, the last sentence. The Bureau of Prisons may transfer the prisoner or begin any such term of supervised release at an earlier date based on the application of time credits under 3632. And for that one, there's no judicial review. And so the question that I came up with is, can Congress in the First Step Act, post-Cunningham obviously, make 3624 G credits judicially reviewable? Certainly it could. Did it? It's a little bit unclear. Now, earned credits, which seem to me to be very analogous, that's a judicial-created habeas principle, isn't it? Or did Congress do that? My understanding is within the First Step Act, the earned... I'm moving back. Before the First Step Act, we have earned time credits being considered a habeas, I mean, it's a determination that affects the length of confinement. Correct. Was that a judicial ruling or a congressional ruling? I don't know the answer to that question offhand. I think it was judicial, but it goes way back. And it goes back to the 30s or 20s even when Congress and courts were... Supreme Court was debating all this. If it was a judicial ruling, and Congress has obviously accepted it, even if it was judicial initially, for decades. Right. So then Congress enacts the First Step Act. The question that would come to mind is, why are these credits... Are these credits the same for habeas purposes as earned time credits? My thought on that is the language within the First Step Act is very clear that these are mandatory credits that must be applied. So I think at that point in time, it's... No, no, no, you're missing... That's not... That's what the statute says. That's how it works. That's not... That doesn't address the habeas issue. So we have some kinds of credits, no matter what the BOP says, those credits are considered habeas eligible, if you will. Right. All right, so why not First Step Act credits? Well, because the Bureau says so. Well, so, you know, they probably didn't like the earned time credits decision either. The Bureau may not even have existed when that started. I think this is a congressional intent question, and I'm not sure what the basis for analysis would be. Well, I think if it's a congressional intent question, then the congressional intent is very clear that they wanted prisoners to go to productive activities, and they gave with them the very tangible benefit. That doesn't get you to the... I mean, they can go to productive activities and, you know, this is different. And I think that... This is particularly judicial, and I don't think BOP controls this. I mean, I think it was a pretty arbitrary decision here by the BOP that probably would not pass muster with most district courts or juries. But they say we get to do it, and you can't review it. And in their brief, they say it's... Who says we can't review it? And in their brief, pages 16, 17, 18, around there, they say it's unreviewable by any court under any circumstances, and that can't be the case. Well, it can if it falls within the Spencer Brightline test. Well, for... And we're not going to... We can't... This panel can't abandon that. No, and I think the Spencer test is accurate. Calling it a Brightline test, I think it's a little bit different because half the courts that look at this say this is the case. Half the courts that look at it say that's the case. I don't think there are any practically any... No, I just think this hasn't been looked at quite right. Well, if there's anything else I can do to help clear it up in my... I think we could. I'm not sure I would, or certainly I don't know whether my colleagues would, remand to look into that, because I think it would take briefing as to how you would measure congressional intent in the first... How you would apply congressional intent in the first step back to this issue, which is outside the four corners of the first step back. It is, but I think the... I think it's well before this court, whether there's jurisdiction or not. And I think looking at the bulk of the other courts that have decided this, it's something that needs to be figured out one way or the other. And my time is long up, so unless Your Honors have any questions... Thank you. I used quite a bit of it. Mr. Grayson. Good morning, Your Honor. May it please the Court. Mr. Fortner's challenge to his designation to serve his term of imprisonment at FPC Duluth is not reviewable, least of all in habeas. The direction of... Your statute and regs and... Don't give me a BOP policy statement for that. I'll give you 18 U.S.C. section 3621B. The very last sentence of that statute was added by Congress in section 601 of the First Step Act itself. This is a provision saying, notwithstanding any other provision of law, I don't have the exact quote, but the BOP's discretion to place an inmate in a particular place of imprisonment is not reviewable. This is an unreviewable place of imprisonment determination. Well, that begs the question of what's a place of imprisonment. So a place of imprisonment, I think the structure of section 3621A helps us understand this. So in subsection A of 3621, Congress says that BOP's custody lasts for the term of the imprisonment, less any good time credits. So when a person is arguing about good time credits, the correct application of those credits goes to the term of the person's custody under subsection A of that statute. Subsection B, by contrast, grants this unreviewable discretion to BOP to determine where a person is placed. But it's more than where, isn't it? It's what kind of custody they're in. You're not changing their cell block. You're changing the conditions under which they're detained, right? I mean, isn't there a case law out there that suggests that sort of thing may be reviewable? I grant that if you're moving them from one FCI to another, that's not reviewable, but that's not what you're doing here, is it? It is a place of imprisonment determination, and here's why. So in Elwood, for example, the Elwood line of cases, Elwood, Miller, and Foltz, this Court didn't reach the jurisdictional question, but it reviewed BOP's statutory authority whether to place someone in pre-release custody, in a halfway house, using Section 3621B. So the Eighth Circuit in Elwood and in Foltz reversed regulatory guidance, sub-regulatory guidance that the BOP had promulgated, because it was inconsistent, you know, BOP's categorical refusal to apply its discretion was inconsistent with 3621B in the context of sending someone to pre-release custody under the Second Chance Act. Subsequently, Congress amends 3621B in the First Step Act and says, these determinations are not reviewable by any court, notwithstanding any other provision of law. And so the movement of a person from a prison camp to pre-release custody, we know from Elwood, from Foltz, is a determination based on the BOP's discretion under Subsection B. And so it's not a question of whether this person is entitled to a release from custody. It's a change in custody, though, right? Do you admit that? It's a change in the level of custody. Similar to a person who's at Florence in Administrative Maximum who gets transferred to medium security in, say, Sandstone, that the level of custody has been reduced. But it's still a question of the BOP's discretion based on a number of factors set out in 3621B that this Court has long said and that Congress has long said is reserved for the BOP's discretion. I don't remember. Does the record show why these credits were not awarded to the plaintiff in this case? The record does not show that. We do frequently see these issues litigated. And it's usually about when the BOP initiates their process of reviewing a person for risk. And the First Step Act requires BOP to put prisoners through a number of assessments over time. And BOP has a lot of regulations on how it does that, when it does that, in what order it does that. And those are the sorts of things that, to the extent this Court finds that BOP's regulations and practices are inconsistent with statute, mandamus relief might be available. Are there administrative procedures, remedies available to the plaintiff in this case? In this case, yes. After filing, I believe at the time Mr. Fortner filed his pro se petition, he had taken part in some of the administrative remedies but hadn't followed those to conclusion. I assume that those have since completed. I don't know that. It's not a matter of record. And because the magistrate judge screened this under the habeas rules, we didn't have an opportunity to make a record on the underlying merits of that claim. Would you address the quantum change argument that the appellant makes? Absolutely. I've got a couple of points to make on quantum change. First is that I think it's inconsistent with Your Honor's opinion in Spencer. And Your Honor, in Spencer, wrote the opinion based on a three-decade-old ruling now in Kruger. It's a bright-line rule. It's categorical. A person claiming habeas relief may only do so to the extent they're in custody, attacking the legality of that custody, and seeking an earlier release from it. Do you think the rule in Spencer is identical to the rule in Kruger? Notwithstanding any potential differences in the precise wording, I do think Well, if it's a bright-line rule, I think the precise wording might matter, right? Sure. So for the bright-line rule, I would point the Court back to the text that Congress provided, and in particular, the word custody. I think, you know, courts might use the word custody. They might use the word confinement. They might use the word detention. But ultimately, what we're asking is, is this properly the subject of habeas relief under 2241c3? And so in Prizer, in the 70s, when the Supreme Court first started down the line of the Prizer-Heck line of cases that exist on the opposite side of this bright-line rule, it said that the traditional writ of habeas corpus, a common law, and based on the statutory language, it called the statutory language clear, that a person must be in custody, they must be attacking the legality of that custody, and they must be seeking a release from that custody. Custody is the word that Congress used in 2241. It's the word that Congress used in 3621a, when it talks about when a person's custody with BOP ends. And most importantly, it's the word that Congress used to describe pre-release custody. A person in pre-release custody is not leaving custody. They're going to a different level of custody. Yes. They're going to the parole or supervised release custody. Or was parole custody? I'm more familiar with supervised release, and so I'll speak to that. I can't speak to the pre-sentencing Reform Act version of Federal parole. But supervised release is not custody as Congress understood that term in 3621a. And the reason is that in 3621a, a person's custody with BOP ends when their sentence, the term of imprisonment at the district court, less good time credits, ends. And so the custody shifts to probation under the supervision of the court. It's different custody. And, yes, the Supreme Court has said a person under supervised release can still make a habeas claim for relief from that custody. Because it's a different kind of custody. It's different custody altogether. It's not just a different kind. It's not just a different level for, like, a person at Florence is in a different level of custody from someone at Sandstone. It's a different custody entirely. They're going from the custody of the BOP to the custody under the broader sense of that term of probation and the terms imposed by the sentencing court. And so the fundamental difference is that BOP is maintaining custody over these people. They're doing it even though they place this person at home or in a halfway house where the conditions are more agreeable, certainly. Better conditions, everyone wants to be in home confinement. But it's still within the custody of the BOP. BOP could engage in its 3621B analysis and redesignate someone to Tara Hope if they wanted to. And that is unreviewable. And we asked the court. All of which would apply to earned time credits if the law wasn't established. I see my time has expired, but if I may briefly. The reason good time credits and earned time credits are different for purposes of this case is that earned time credits under the FSA can be applied towards release up to 365. And so a person who's asking. That doesn't get to the core issue. Okay, let's. Well, respectfully, Your Honor, I think the core issue under the Brightline rule is the relief requested. And here it's not release. Thank you. Thank you. I'll give you a minute for rebuttal. Thank you very much, Your Honor. The Supreme Court has been clear that in habeas petitions, we can't put the semantic label over the reality of the situation. And the reality of this situation is that Congress gave people the right to earn time outside of the walls of the prison. And under the BOP's interpretation of the statute, that act is meaningless. Because it's just a suggestion to them that they can do anything that they want with. And the executive has the only power. The judicial branch has no power to review. And the executive branch's statute that is unclear in some ways, but is very powerful and significant change in the imprisonment regime of our country. It's just all a suggestion to the BOP. I submit that that's inconsistent with the law and inconsistent with the statutory language. Unless Your Honors have any questions. Thank you. Thank you, Counsel. Case has been well briefed. The argument's been helpful. For me, it's not an easy question. So we'll take it under advisement.